**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

MAUREEN A. KIDD
P.O. Box 11232
Milwaukee, WI 53211
     Plaintiff,

  -v.-

LOGISTEC TERMINALS INC
A/K/A FEDERAL MARINE TERMINALS
740 N Plankinton Street, Suite 534
Milwaukee, WI 53202
     Defendant Employer,

-and-

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO (ILA)
5000 West Side Avenue, Suite 400
North Bergen, NJ 07094,

ILA GREAT LAKES DISTRICT COUNCIL (GLDC)
2015 Forest Ave., Suite C-6
Staten Island, NY 10303,

-and-

ILA LOCAL 815
1300 S. Lincoln Memorial Drive
Milwaukee, WI 53207-1041
     Defendant Union.

         Case No. _____

---

## COMPLAINT

---

1. Plaintiff, Maureen A. Kidd, by her undersigned attorneys, CM Law Firm, S.C., alleges as

follows:

1

## NATURE OF THE ACTION

2. This action seeks damages and equitable relief for violations of applicable Master and Local Collective Bargaining Agreements (CBAs) and federal labor statutes. Defendants breached the Master and Local CBAs and, in processing Plaintiff's grievances, the Union breached its duty of fair representation under § 301 of the Labor Management Relations Act (LMRA). The Union also violated Title I of the Labor Management Reporting and Disclosure Act (LMRDA) by denying Plaintiff notice, the right to be heard, and equal participation in union meetings, and by failing to follow the ILA Constitution and Local 815 Bylaws.

## PARTIES

3. Plaintiff Maureen A. Kidd ("Plaintiff") is a longshore worker and member of International Longshoremen's Association, Local No. 815, working at or through the dispatch hall serving the Port of Milwaukee, Wisconsin.

4. Defendant Employer Logistec Terminals, Inc., also known as Federal Marine Terminals, ("Employer") is an employer engaged in maritime/stevedoring operations within the meaning of § 301 of the LMRA, 29 U.S.C. § 185, and does business in this District.

5. Defendant International Longshoremen's Association, AFL–CIO (ILA) and its subordinate bodies Great Lakes District Council (GLDC) and ILA Local No. 815 (collectively, "the Union") are labor organizations as defined in 29 U.S.C. § 152(5) that represent longshore workers, including Plaintiff, and do business in this District.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and § 1337.

7. The first claim for relief arises under LMRA § 301(a), 29 U.S.C. § 185(a), as a hybrid claim alleging that the Employer and Union breached the applicable collective bargaining agreements

2

("**CBAs**") and that the Union breached its duty of fair representation in processing Plaintiff's grievance.

8. The second claim for relief arises under the LMRDA, Title I, including § 101(a)(1)-(2), 29 U.S.C. § 411(a)(1)-(2), enforceable via § 102, 29 U.S.C. § 412.

9. Venue is proper in this District under 29 U.S.C. § 185(c) and 29 U.S.C. § 412, because a substantial part of the events or omissions giving rise to the claims occurred in this District, the Union does business and maintains offices and agents here, and the Employer conducts operations here.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10. The Union and Employer are parties to a Master Collective Bargaining Agreement ("**Master CBA**") between Great Lakes Stevedore Employers (GLSE) and the ILA Great Lakes District Council (GLDC). Among other things, Section 25 of the Master CBA establishes a mandatory grievance/arbitration procedure governing disputes "relating to the meaning, interpretation, or application" of the Master CBA. In brief: (a) an aggrieved employee first reports a grievance orally within seven (7) working calendar days of its occurrence to the designated GLDC officer and the Employer representative (Step One); (b) if not resolved, the grievance must be reduced to writing within twenty-one (21) working calendar days after the oral submission and presented to the designated Employer representative (Step Two), to which the Employer must respond in writing within fourteen (14) "working calendar days"; and (c) if the Step Two answer does not resolve the matter, either party may demand arbitration by written notice within ten (10) working calendar days after receipt of that answer, with arbitrator selection and scheduling as provided in section 25(F). The Master CBA also sets dispatch/seniority rules and rate classifications relevant to Plaintiff's claims.

3

11. The parties also operate under a Local Working Agreement ("Local CBA") between Logistec/Federal Marine Terminals and ILA Local 815. Relevant terms of this agreement include: (a) §3.1 (new-employee eligibility and Local governance documents); (b) §§5.1–5.7 (premium/overtime rates and continuous-hours rules); (c) §§8.1–8.7 (union referral and preferred lists; nondiscrimination in referral; employer right to reject for cause); (d) §22 (nondiscrimination); and (e) §34–35 (grievance procedures to be handled in accordance with Master CBA §25). Plaintiff lost work opportunities, earnings, and seniority when illicit "hour-selling/buying" schemes distorted dispatch and union-membership sequencing in 2024 and 2025, allowing junior workers to pass Plaintiff and receive higher-paid and guaranteed-hour assignments.

12. In addition to the CBAs, the Union's conduct is governed by the ILA Constitution and Rules of Order and the Local 815 Bylaws. The ILA Constitution regulates internal union affairs, meetings, ethics, and member due process. A union constitution is enforceable as a contract under LMRA §301. The Local 815 Bylaws supply additional procedures for charges, trials, and Executive Board processing of member complaints, including notice and appeal requirements.

13. Under Article XI of the Local 815 Bylaws, members are entitled to fair treatment and due process. A member who believes she has been denied rights, including in matters connected with employment, may submit a written complaint to the Executive Board by filing it with the President, Financial Secretary-Treasurer, or Business Agent. The Executive Board must then consider the complaint at its next regular meeting, and the member must receive written notice of the time and place of that meeting at least ten (10) days in advance at her last known address. If the Executive Board fails to give the 10-day notice, the complaint is deferred until proper notice occurs.

14. If dissatisfied with the Executive Board's decision on a complaint, the member may appeal to the general membership. A 90-day filing deadline applies to both the initiating complaint and any appeals.

15. As outlined in the ILA Constitution, the ILA Code of Ethics and Hiring Hall Guidelines expressly prohibit "offering, soliciting, or accepting money or anything of value in return for a job assignment or membership in the union" and require adequate recordkeeping to verify that hiring-hall operations are fair and impartial. Those provisions apply to officers, representatives, and members and are enforceable through internal discipline.

16. The CBAs, the ILA Constitution, and Local 815's Bylaws require the Union to operate a fair, non-discriminatory hiring hall, to enforce the prohibition against any practice of selling or buying hours, and to process member complaints and contract grievances with timely notice, hearing, and reasoned decisions. Despite those requirements, Defendants deviated from the referral and grievance systems and failed to afford Plaintiff the protections guaranteed by those agreements.

17. From 2021 through 2024, while not yet admitted to the Union (and therefore considered an "extra worker"), Plaintiff was assigned work on an arbitrary, discriminatory, and bad-faith basis. She was denied higher-paying jobs and advancement opportunities because of sex. Male workers with less seniority and experience were routinely placed ahead of Plaintiff, received training, and moved into higher-paid classifications, while Plaintiff was passed over without legitimate, contract-based explanation. In December 2024, two other extra workers were admitted to the Union upon reaching a total of 500 hours worked in a single year. Plaintiff met this milestone shortly after them, placing her beneath them in the Union seniority system that determines work assignments.

5

18. On or about May 12, 2025, Plaintiff learned that the two other coworkers who had been admitted to the Union ahead of her in December 2024 had achieved that membership status by purchasing hours from another Union member in violation of the ILA Constitution and other applicable agreements.

19. On or about May 13, 2025, Plaintiff made a timely oral report to three members of the Local 815 Executive Board that she had just learned of hour-buying/selling during 2024. She also reported that this hour-buying/selling improperly advanced other members' seniority and membership ahead of her throughout 2025. The Board members directed Plaintiff to submit a formal grievance. On the same date, Plaintiff also made a Step-One oral report under the Master CBA to the Employer's designated representative, again identifying hour-buying/selling and manipulated referrals that distorted seniority and deprived her of work in 2024 and 2025. The Employer's representative refused to process the grievance and instructed Plaintiff to take it back up with the union. By declining to address a Step-One report and by directing Plaintiff away from the contractual grievance channel, the Employer thwarted the Master CBA procedure and prevented the matter from moving to Step Two under the Master CBA.

20. On May 15, 2025, Plaintiff sought a grievance form and written procedures from Local 815 and the GLDC office. She was told that no standard form was available and, despite repeated requests (including one during her 2020 onboarding) she was not given any written procedures. She eventually received partially illegible copies of the Local 815 bylaws in June 2025.

21. On May 16, 2025, Plaintiff observed the union referral office lead, who is in charge of assigning work, publicly and theatrically socializing with one of the union members identified in her report as having benefited from hour-buying. Another union member told Plaintiff "that's how it works." These events, along with subsequent comments and treatment, signaled a hostile

and retaliatory climate toward Plaintiff's protected complaints and further undermined confidence in fair referral and grievance processing.

22. On May 30, 2025, Plaintiff filed a formal, written grievance with the ILA Local 815 Executive Board in accordance with Article XI, Section 8 of the ILA Local 815 Bylaws. This written grievance reported and challenged the buying and selling of hours and resulting seniority placement.

23. In a letter that was given to Plaintiff on June 16, 2025 but was dated June 11, 2025, the Union stated that an internal review found all hours were obtained legally and that no seniority changes would be made. These findings relied on three unsworn statements from the accused individuals.

24. On or about June 26, 2025, Plaintiff presented an appeal letter to the ILA Local 815 Executive Board, in which she objected to the Executive Board's decision. She also noted that the Executive Board failed to comply with the mandates to consider the complaint at the next Executive Board meeting and to provide at least 10 days' notice of that meeting. Plaintiff also requested that a general membership meeting be convened.

25. On July 30, 2025, Local 815 held a regular general membership meeting but, in violation of the ILA Local 815 Bylaws, Plaintiff's complaint was neither placed on the agenda nor considered at the meeting.

26. During the meeting, Plaintiff asked to present her written appeal and to have it placed on the agenda for discussion and a vote. The presiding officer refused, repeatedly asserting "that's not true" when Plaintiff cited the ILA Constitution and appeal procedure. The officer also stated he had "done all [he was] going to do" and would not act "until somebody from the outside" told him otherwise. He then called for adjournment without taking up Plaintiff's appeal.

27. As part of this exchange, the presiding officer threatened Plaintiff's employment, stating that if she "really want[ed] to push this," she "cannot work" until it was resolved. He also told Plaintiff she "could be expelled from the union." These statements intimidated Plaintiff and chilled her participation in the meeting.

28. A member-witness who was present at the meeting stated on the record that he personally witnessed hours being sold at the hall in early June 2024. When pressed, he confirmed it and later tendered a written statement after adjournment. Rather than process the statement, the presiding officer responded that he would not move forward without an attorney or outside authority.

29. Also at the July 30, 2025 meeting, Plaintiff renewed her request for the 2024 Work Assignment Sheets she had asked for in her May 30 written grievance and again in her mid-June written appeal. In the renewed request, she explained that these records were needed to correlate phone records and corroborate eyewitness testimony. The Union refused to produce those referral records.

30. The July 30, 2025 meeting featured hostile interruptions and shouting by officers and members, including remarks minimizing the request to place Plaintiff's appeal on the agenda and assertions that she had "no proof," despite an eyewitness on the floor and the availability of referral records. The motion to adjourn carried while Plaintiff was still attempting to be heard.

31. On August 1, 2025, Plaintiff sent an informal letter to report her complaints to the ILA, GLDC.

32. On August 27, 2025, Plaintiff sent a formal certified letter reporting her complaints to the ILA, GLDC, and Atlantic Coast District Headquarters. Those entities did not respond.

33. As of the filing of this Complaint with this Court, the Union has continued its failure and refusal to respond to or otherwise acknowledge Plaintiff's complaints.

34. After Plaintiff reported hour-selling and filed her initial written grievance, Union officials and favored members subjected her to hostility and disparate treatment, including efforts to exclude her from work, smears and profanity, and public threats of expulsion, while junior male members received training and favored assignments. These retaliatory acts violated the CBAs and Plaintiff's LMRDA-protected rights. They also created a hostile workplace resulting in the Plaintiff's constructive discharge from employment.

35. The Employer has accepted and benefited from the disputed seniority placements and dispatch results and has refused to correct them under the CBAs.

36. Plaintiff timely invoked the Master CBA process by making a Step-One oral report to the Employer on May 13, 2025, and then promptly seeking to reduce the grievance to writing. The Employer refused to accept or process the grievance and told Plaintiff to take it up with the Union. The Union refused to follow its own internal procedures and also refused to transmit the grievance to the Employer. The contractual procedures were therefore blocked, rendering any further pursuits futile. Plaintiff diligently pursued internal remedies. The Union's statements that it would not proceed locally and would act only if directed by an outside authority, combined with its threats against Plaintiff and its refusal to produce referral records, also rendered internal remedies futile. The ILA Constitution's exhaustion bar does not extend beyond four months, which has elapsed.

37. Plaintiff has acted diligently at every stage and files within the applicable limitations period, including the six-month period applicable to hybrid § 301/Duty of Fair Representation claims.

## FIRST CLAIM FOR RELIEF
### Pursuant to § 301 of the LMRA / Duty of Fair Representation
### Against Employer and Union Defendants

38. Plaintiff realleges the allegations of all preceding paragraphs above and incorporates them by reference as if fully set forth herein.

39. The Employer breached the Master and Local CBAs by: (a) recognizing and applying improper seniority obtained through illicit buying and selling of hours; (b) failing to correct seniority lists and dispatch; (c) failing to produce or maintain adequate hiring-hall records necessary to verify fair and non-discriminatory referral; (d) refusing to accept or process Plaintiff's Step-One oral report on or about May 13, 2025; (e) refusing to accept a Step-Two written grievance; and (f) continuing to apply a tainted referral/seniority regime after notice, thereby denying Plaintiff work opportunities and earnings.

40. The Union breached the Master and Local CBAs and its duty of fair representation by acting arbitrarily, discriminatorily, and in bad faith, including by: (a) crediting unsworn statements without a fair inquiry; (b) refusing to timely consider Plaintiff's complaint; (c) failing to place the grievance or appeal on meeting agendas for required consideration; (d) failing to give required notice and to issue reasoned written decisions; (e) favoring other members and stonewalling Plaintiff; (f) administering the hiring hall in an arbitrary, discriminatory, and retaliatory manner; (g) diverting a grievance into internal bylaw "reviews," refusing to transmit Plaintiff's written grievance to the Employer; (h) failing to obtain, maintain, and produce referral/work-assignment records needed to verify fair, non-discriminatory operations; (i) refusing to demand a Step-Two Employer response and to advance the matter to arbitration; (j) refusing to submit Plaintiff's appeal to membership discussion and vote and announcing that the Union would not act absent any direction from "somebody from the outside," and (k) threatening

10

that Plaintiff "cannot work" and threatening expulsion because she pressed her appeal, thereby intimidating her and chilling her protected participation.

41. The Defendants' breaches seriously undermined the grievance procedure and tainted the enforcement of the CBA, causing Plaintiff loss of seniority, hours, earnings, benefits, and opportunities.

42. WHEREFORE, Plaintiff demands judgment against Defendants for:

(a) Three Hundred Seventy-Nine Thousand Two Hundred Sixteen Dollars ($379,216.00) or such amount as proven at trial in lost wages;

(b) All available damages;

(c) Pre- and post-judgment interest;

(d) Costs of suit;

(e) Equitable relief, including correction of seniority/dispatch records, make-whole adjustment of referral history, expungement of retaliatory notations, and an injunction against further retaliation; and

(f) Such other and further relief as the Court deems equitable and just.

**SECOND CLAIM FOR RELIEF**
**Pursuant to LMRDA Title I (29 U.S.C. §§ 411, 412) Against Union Defendants**

43. Plaintiff realleges the allegations of all preceding paragraphs above and incorporates them by reference as if fully set forth herein.

44. The Union arbitrarily, discriminatorily, and with bad faith denied Plaintiff equal rights to attend and participate in the July 30, 2025 general membership meeting, including the right to be heard on her properly filed grievance and appeal, in violation of 29 U.S.C. § 411(a)(1).

45. By blocking agenda placement, refusing discussion and vote on Plaintiff's appeal at the July 30, 2025 general membership meeting, threatening her ability to work, and permitting hostile

interruptions that prevented her and a corroborating witness from being fairly heard, Defendants denied Plaintiff equal rights to meet and speak, and used intimidation to interfere with the exercise of those rights, in violation of 29 U.S.C. § 411(a)(1)–(2).

46. The Union also retaliated against Plaintiff and suppressed Plaintiff's protected expression regarding corrupt or improper practices (hour buying/selling), contrary to 29 U.S.C. § 411(a)(2).

47. The Union's processes lacked fundamental fairness and due process, including failure to provide notice, hearing, minutes, and reasoned written decisions, chilling Plaintiff's protected rights.

48. WHEREFORE, Plaintiff demands judgment against Defendants for:

(a) Three Hundred Seventy-Nine Thousand Two Hundred Sixteen Dollars ($379,216.00) or such amount as proven at trial in lost wages;

(b) All available damages;

(c) Pre- and post-judgment interest;

(d) Attorney's fees and costs under 29 U.S.C. § 412;

(e) Equitable relief, including correction of seniority/dispatch records, make-whole adjustment of referral history, expungement of retaliatory notations, and an injunction against further retaliation; and

(f) Such other and further relief as the Court deems equitable and just.

## CUMULATIVE PRAYER FOR RELIEF

49. WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally where permitted, awarding the relief stated above and any other just relief.


## JURY DEMAND

50. Plaintiff demands a jury trial on all legal issues so triable.

Dated: January 23, 2026.

Respectfully submitted,

s/ *Attorney Carrie May Bjorkquist*
Attorney Carrie May Bjorkquist
State Bar No. 1070987
Attorney for Plaintiff
CM Law Firm S.C.
3224 N. Shepard Ave.
Milwaukee, WI 53211
Telephone: 414-379-8974
Email: CM@CMinCourt.com